# SETTLEMENT AGREEMENT

This Settlement Agreement (hereinafter referred to as "Agreement") is made and entered into by and between Christy M. Kent (hereinafter referred to as "Kent") and Wagner Service Solutions, Inc. (hereinafter referred to as "Wagner") and Ashley Thompson (hereinafter referred to as "Thompson").

I

For and in consideration of the execution and non-revocation of this Agreement by Kent, Wagner and Thompson agree to provide a lump sum payment in the gross amount of Forty-Two Thousand Dollars and 00/100 Cents ($42,000.00) payable as follows: (i) a check made payable to Christy M. Kent in the gross amount of Thirteen Thousand Five Hundred Dollars and 00/100 Cents ($13,500.00), less all legally required withholding taxes and payroll deductions (calculated on the basis of the Form W-4 already on file for Kent) as payment for claimed but disputed lost wages for which Wagner will issue or cause to be issued an IRS Form W-2; (ii) a check made payable to Christy M. Kent in the gross amount of Thirteen Thousand Five Hundred Dollars and 00/100 Cents ($13,500.00), as payment for claimed but disputed non-wage damages, from which no withholdings will be made and for which Wagner will issue or cause to be issued an IRS 1099 categorizing this amount as "box 3" other income; and (iii) a check made payable to Kevin D. Fitzpatrick, Jr., in the gross amount of Fifteen Thousand Dollars and 00/100 Cents ($15,000.00), for which Wagner will issue or cause to be issued an IRS Form 1099. These payments are provided in settlement of all of Kent's claims against Wagner and Thompson and/or all of their affiliated companies and representatives, including, but not limited to, the lawsuit filed with the United States District Court for the Northern District of Georgia, bearing case number 2:14-CV-292-RWS, captioned *Christy M. Kent v. Wagner Service Solutions, Inc. and Ashley Thompson* (the "Lawsuit").



CMK CMK Initials

Delivery of the aforementioned settlement checks shall be made to Kent's counsel of record, Kevin D. Fitzpatrick Jr., Esq., within a reasonable time, not to exceed ten (10) business days following receipt by counsel for Wagner of: (i) a W-9 Form completed by Kent, (ii) a W-9 Form completed by Kevin D. Fitzpatrick, Jr. , and (iv) the original of this Agreement executed by Kent before a notary public and signed by her counsel (and presuming that the consideration and revocation periods detailed in Paragraph XII below have expired). The document(s) referenced in the preceding sentence shall be sent via traceable mail delivery to: Lisa M. Szafranic, Martenson, Hasbrouck & Simon LLP, 3379 Peachtree Road, N.E., Suite 400, Atlanta, Georgia 30326. Within five (5) business days of receipt of the funds provided herein Kent will file a Stipulation of Dismissal With Prejudice in the Lawsuit.

II

For and in consideration of the agreements and commitments set forth above, the receipt and sufficiency of which are hereby acknowledged, Kent does hereby knowingly and voluntarily release and forever discharge Wagner and Thompson, any corporate parent(s), subsidiaries and affiliates, and their officers, directors, employees (current and former), shareholders, attorneys, servants and agents, together with their successors and assigns (hereinafter collectively referred to as the "Releasees") from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demands whatsoever, in law or in equity (hereinafter collectively referred to as "claims"), whether known or unknown, which Kent ever had, now has, or may or might in the future have against the Releasees, arising out of events or occurrences which arose at or before the moment Kent signs this Agreement, including, but not limited to: (i) those claims arising out of or in any way connected with the circumstances surrounding the Lawsuit; (ii) those claims arising under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, the Older Workers' Benefit Protection Act of 1990, 29 U.S.C. § 626(f), *et seq.* and/or



CMK CMK Initials

Georgia's Age Discrimination Act, O.C.G.A. § 34-1-2; (iii) those claims arising under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 and/or Georgia's Equal Employment for Persons with Disabilities Code, O.C.G.A. §§ 34-6A-1 through 34-6A-6; (iv) those claims arising under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*; (v) those claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended, O.C.G.A. § 34-1-3 *et seq.* (anti-discrimination against jurors), O.C.G.A. § 18-4-7 (anti- discrimination against garnishees), O.C.G.A. § 19-11-20(b) (anti-discrimination against individuals subject to wage assignments), and/or any other applicable state fair employment practices statute and/or any ordinance promulgated by any county, municipality, or other state subdivision; (vi) those claims arising under the Equal Pay Act of 1963, 29 U.S.C. §§ 206 *et seq.* and/or Georgia's Equal Pay for Equal Work Act, O.C.G.A. § 34-5-1 *et seq.*; (vii) those claims arising under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.*, including, but not limited to, salary, severance pay and accrued time, and any other benefits; (viii) those claims arising under the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.* and/or O.C.G.A. § 34-6-6 (labor management relations); (ix) those claims arising under the Fair Labor Standards Act, O.C.G.A. § 34-4-1 *et seq.* (wage and hour laws), O.C.G.A. §§ 10-1-700 to 10-1-704 (sales representative laws) and any other applicable state and local wage and hour statutes; (x) those claims under the Sarbanes-Oxley Act of 2002, 18 U.S.C. §§ 1514A *et seq.*, the Whistleblower Protection Act of 1989, 5 U.S.C. §§ 1201 (2000) *et seq.*, the Dodd-Frank Wall Street Reform and Consumer Protection Act, 124 Stat. 1376 (July 21, 2010) and/or any other state or federal anti-retaliation and/or whistleblower protection statute, act, regulation or provision; (xi) those claims arising under the Worker Adjustment and Retraining Notification Act; (xii) those claims arising under the Family & Medical Leave Act; (xiii) those claims arising under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301 *et seq.*, O.C.G.A. § 38-2-280



CMK CMK Initials

(military leave) and any other applicable state and/or local military rights laws; (xiv) those claims arising out of those claims arising under the Occupational Safety and Health Act of 1970 and any state and/or local occupational safety and health laws; (xv) those claims arising under any federal or state handicap or disability discrimination act, regulation or executive order; (xvi) those claims for retaliatory or wrongful discharge of any kind including, but not limited to, O.C.G.A. § 23-3-120 *et seq.* (anti-retaliation for reporting false medical claims) and/or O.C.G.A. § 9-11-11.1 (anti-SLAPP); (xvii) those claims for intentional or negligent infliction of emotional distress or outrageous conduct; (xviii) those claims for breach of duty, misrepresentation, fraud, negligence, libel, slander, defamation or tortious conduct of any kind; (xix) those claims for interference with business relationships, contractual relationships, or employment relationships of any kind; (xx) those claims for breach of duty and/or the implied covenant of good faith and fair dealing; (xxi) those claims for interference with and/or breach of contract (express or implied, in fact or in law, oral or written); (xxii) those claims arising under or in reliance upon any statute, regulation or ordinance (local, state, or federal); and (xxiii) any and all other claims which Kent ever had, now has, or may or might in the future have arising by reason of or in any way connected with any employment relationship which may have existed prior to or on the date hereof between Kent and Wagner and/or Thompson and/or the termination of that relationship, provided, however, that this Agreement does not affect any vested retirement benefit rights or COBRA rights which Kent may now have.

III

Kent further acknowledges and covenants that, in consideration for the agreements and commitments set forth in Paragraph I hereof, she has knowingly relinquished, waived and forever released any and all damages and remedies which might otherwise be available to her, claims for contract or tort damages of any type, claims for legal or equitable relief under either



CMK CMK Initials

federal or state statutory and common law, claims for back pay, reinstatement and recovery of attorneys' fees. Kent further warrants that as of the time of execution of this Agreement, Kent has not assigned or transferred any claims of any nature that she would otherwise have against Releasees. Kent further acknowledges that she has received all payments and benefits that she is entitled to receive by virtue of any employment with Wagner and/or Thompson including, but not limited to, payment for any and all wages, salary, bonuses, overtime compensation, meal and/or rest breaks, earned or accrued vacation and/or personal days owed to her by Wagner and/or Thompson up to the moment of her execution of this Agreement.

IV

Kent further agrees that if a state or federal agency (including, but not limited to, the United States Department of Labor (hereinafter referred to as "DOL"), or the United States Equal Employment Opportunity Commission (hereinafter referred to as "EEOC")) independently pursues any relief on behalf of Kent from Releasees, Kent shall not accept any benefits awarded in her favor, if any, including without limitation, any damages or injunctive relief specific to Kent. Nothing in this Agreement prevents Kent from filing a Charge or Complaint with the EEOC, including a challenge to the validity of this Agreement, or cooperating in any investigation or proceeding conducted by the EEOC. However, Kent understands that this Agreement bars her from accepting any relief or recovery associated with her own such filing or complaint and any such filing or complaint by the EEOC or any other governmental agency on her behalf. Notwithstanding any other provision contained herein, nothing in this Agreement shall be construed as a waiver of any right which, by law, cannot be waived.

V

Kent further acknowledges and covenants not to sue Wagner and/or Thompson, or to participate or aid in any way in any suit or proceeding or to execute, seek to impose, collect or



CMK CMK Initials

recover upon, or otherwise enforce or accept any judgment, decision, award, warrant or attachment upon any claim released by her herein. Kent also acknowledges and covenants that she understands that after signing this Agreement, she cannot proceed against any person or party mentioned in it with respect to or on account of any of the matters referred to in it. Kent further agrees that she and her attorney will take whatever steps are necessary to ensure that her Lawsuit is withdrawn and dismissed by the Court and the settlement checks shall be held in trust by attorney Fitzpatrick until such withdrawal and dismissal of the Lawsuit by the Court.

VI

Kent shall be responsible for the payment of any and all local, state, and/or federal taxes which may be attributable to the payments described above and indemnifies and holds Releasees harmless from any and all tax consequences, including interest and/or penalties, arising out of the payments described in Paragraph I above. The parties acknowledge that no representations have been or are made herein by or to any signatory to this Agreement regarding the tax consequences of this Agreement.

VII

In further consideration of this Agreement and the commitments set forth in Paragraph I hereinabove, Kent agrees that her employment with Wagner and any employment with Thompson will terminate effective upon her execution of this Agreement, and she does hereby agree and acknowledge that she is not entitled to and will not seek employment, reemployment and/or reinstatement with Thompson, Wagner and/or their subsidiaries or affiliates. If Kent files for unemployment benefits with the Georgia Department of Labor, Wagner will not dispute, challenge or contest Kent's entitlement to unemployment benefits based on her separation from employment with Wagner.



CMK CMK Initials

VIII

Kent further represents that except for the Lawsuit, she has not filed or made any complaints concerning Releasees with any governmental agency, including without limitation the DOL or the EEOC. If Kent has filed any such complaint, she agrees to take whatever steps are necessary to withdraw and/or dismiss the complaint. Kent further agrees not to solicit, incite or encourage any individual or current or former employee of Wagner and/or Thompson to bring a claim, make a complaint, file a charge and/or pursue litigation against the Releasees with any governmental agency including, without limitation, the DOL, the EEOC and/or with any court of competent jurisdiction.

IX

Kent agrees and covenants that she has carefully reviewed, studied and thought over the terms of this Agreement, and that all questions concerning this have been answered to her satisfaction. Kent further represents and agrees that she was advised and encouraged, prior to her execution of this Agreement, to discuss and review all aspects of this Agreement with her private attorney and that she has, to the extent she wished to do so, availed herself of this opportunity.

X

It is also understood and agreed that this Agreement is executed by Kent voluntarily and is not based upon any representations or statements of any kind made by Wagner and/or Thompson or any of their representatives as to the merits, legal liabilities, or value of any current or potential claims which Kent may have. Kent also acknowledges that no promise or inducement for this Agreement has been offered or made, except as herein set forth, and this Agreement contains the full terms of the agreement between Kent and Wagner and Thompson.



CMK CMK Initials

XI

Kent consents and agrees that she will not directly or indirectly, orally or in writing, disparage Wagner and/or Thompson, their services, products, employees (current and former), representatives, agents and/or attorneys in any way or interfere in any way with relationships Wagner and/or Thompson have with their clients/customers and/or employees. Thompson agrees that she will not directly or indirectly, orally or in writing, disparage Kent, her work performance, integrity or character or in any way interfere with a relationship Kent may have with an employer or entity to which Kent has applied for employment. Wagner further agrees to provide Kent with a neutral letter of reference on Company letterhead, the text for the letter being attached hereto as Exhibit A.

XII

Kent acknowledges that she was given at least twenty-one (21) days to consider this Agreement prior to signing, and that she has seven (7) days after execution to revoke her agreement to its terms. In the event Kent decides to waive the twenty-one (21) day time period in which to consider this Agreement and decides to sign this Agreement immediately, she agrees to execute the Waiver attached hereto as Exhibit B.

XIII

It is further understood and agreed that this Agreement is entered into voluntarily by both parties, and that the payment and benefits conferred herein are not to be construed as an admission of liability on the part of the persons, corporations and entities hereby released, by whom liability is expressly denied.

XIV

This Agreement shall be binding upon Kent, her heirs, executors, administrators, assigns, successors, beneficiaries, employees and agents, and all other persons asserting claims by, on behalf of, or through Kent based or founded upon any of the claims released herein. Kent acknowledges



CMK CMK Initials

that this Agreement is made and entered into in the State of Georgia and shall, in all respects, be interpreted, enforced and governed under the laws of said State. All terms of this Agreement shall inure to the benefit of the Releasees and their predecessors, successors and assigns.

XV

In the event either party pursues legal action in an attempt to enforce the terms of this Agreement, the prevailing party in such action shall be entitled to her or its reasonable attorneys' fees and costs.

XVI

Should any word, phrase, clause, sentence or paragraph of this Agreement be deemed unenforceable by a competent court of law, the enforceability of the remainder of the Agreement shall be unaffected.

XVII

Kent acknowledges and agrees that, should she fail or refuse to execute this Agreement, all obligations of Wagner and/or Thompson, including the obligation to provide money to Kent as set forth herein, shall be entirely null, void and of no effect.

XVIII

This Agreement constitutes the entire agreement between Kent and Wagner and Thompson pertaining to the subjects contained in it and supersedes any and all prior and/or contemporaneous agreements, representations, or understandings, written or oral, with the exception of any confidentiality agreement executed by Kent, which remain in effect and binding. It is expressly understood and agreed that this Agreement may not be altered, amended, modified or otherwise changed in any respect or particular whatsoever except in writing duly executed by Kent and an authorized representative of Wagner and Thompson. This Agreement is intended to fully, completely and forever resolve all disputes based upon events, omissions or



CMK CMK Initials

acts occurring on or prior to the time of its execution as well as all other issues or claims in any way arising out of or connected with any prior employment of Kent with Wagner and/orThompson or the termination of that employment.

IN WITNESS WHEREOF, Christy M. Kent sets her hand and seal this 17th day of July, 2015.

Christy M. Kent

For and on behalf of
Wagner Service Solutions, Inc.

Ashley Thompson

Approved as to form by:

Kevin D. Fitzpatrick Jr., Esq.



CMK CMK Initials

**Exhibit A**

[Printed on Company Letterhead]

TO WHOM IT MAY CONCERN:

This letter concerns Christy Kent, a former employee of Wagner Service Solutions, Inc. (hereinafter "Company"). Company policy limits reference information to dates of employment and positions held. In this regard, Ms. Kent was employed with the Company from June 2013 until July 2015. During her employment with the Company, Ms. Kent held the following positions: Receptionist and Recruiter.

Sincerely,

Jeff Wagner
Chief Executive Officer



CMK CMK Initials

**Exhibit B**

**WAIVER OF TWENTY-ONE (21) DAY CONSIDERATION PERIOD**

I, Christy M. Kent, understand and agree to the following:

1. In connection with the with the settlement of any and all claims and/or potential claims arising out of my employment and/or separation from employment with Wagner Service Solutions, Inc. and/or Ashley Thompson, I have been presented with a Settlement Agreement (hereinafter "Agreement") that I have to sign in order to receive my settlement consideration.

2. The Agreement provides that I have been given the opportunity to take twenty-one (21) days to consider the Agreement before signing it.

3. I have reviewed the Agreement, and I understand it and am in agreement with its terms.

4. I would prefer to sign and return this Agreement and receive the consideration without having to wait the entire twenty-one (21) day consideration period. I understand that even if I decide to waive the twenty-one (21) day consideration period, I still have seven (7) days from the date of my execution of the Agreement within which to revoke the agreement and the company has a reasonable period of time within which to pay me my settlement consideration.

5. In order to sign and return this Agreement and receive the consideration without having to wait the entire twenty-one (21) day consideration period, I hereby waive my right to take twenty-one (21) days to consider the Agreement before signing it, and instead choose to sign it at the same time as this Waiver or soon thereafter.

BY SIGNING MY NAME BELOW, I HEREBY CERTIFY THAT I UNDERSTAND AND AGREE TO THE TERMS OF THIS WAIVER, AND THAT MY DECISION TO SIGN THIS WAIVER WAS ENTIRELY VOLUNTARY.

Dated: July 17, 2015

Christy M. Kent
Christy M. Kent



CMK CMK Initials